UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------x
DEBORAH CHIN, on behalf of herself
and all others similarly situated,

                  Plaintiff,

  -against-

SONUS NETWORKS, INC., HASSAN AHMED
and STEPHEN J. NILL,

                  Defendants.
---------------------------------------x

Civil Action No. 04-CV-10308-DPW

---------------------------------------x
WHEATON ELECTRICAL SERVICES
RETIREMENT 401K PROFIT SHARING PLAN,
on behalf of herself
and all others similarly situated,

                  Plaintiff,

  -against-

SONUS NETWORKS, INC., HASSAN AHMED
and STEPHEN J. NILL,

                  Defendants.
---------------------------------------x

Civil Action No. 04-CV-10383-DPW

## MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND IN FURTHER SUPPORT OF MOHAMMAD AKHTAR'S MOTION TO APPOINT LEAD PLAINTIFF

POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP
Stanley M. Grossman
Marc I. Gross
100 Park Avenue
New York, NY 10017
Telephone: (212) 661-1100

LAW OFFICES OF RICHARD J. VITA, P.C.
Richard J. Vita
77 Franklin Street, Suite 300
Boston, MA 02110
Telephone: (617) 426-6566

Attorneys for Proposed Lead Plaintiff Mohammad Akhtar

Plaintiff Mohammad Akhtar ("Akhtar" or "Movant") respectfully submits this Memorandum of Law in Opposition to the Competing Motions for Appointment of Lead Plaintiff and in Further Support of his Motion for Appointment as Lead Plaintiff.

## INTRODUCTION

Currently, there are six competing motions for appointment of Lead Plaintiff in the related actions against Sonus Networks, Inc. ("Sonus" or the "Company") and certain of the Company's senior officers and directors. Unlike the other movants, Akhtar does not suffer any of the defects upon which courts have denied motions for appointment of lead plaintiff. When the Court reviews the submissions by the other movants, it will find that some are no more than attorney-driven groups, or fail to net all of the transactions during the Class Period, or suffer an inherent conflict of representing two competing entities.

Akhtar does not suffer any of these defects, nor does its counsel suffer any conflicts or antagonisms to the Class. Further, Akhtar is the type of plaintiff courts have traditionally recognized as adequate Class Representatives. Akhtar purchased 23,400 shares of Sonus common stock during the Class Period and has retained all of his stock to date. He relied upon the market price of Sonus common stock and lost, as a result of the false and/or misleading information in the market, $45,400. Accordingly, Akhtar respectfully requests the Court grant his motion and appoint him Lead Plaintiff and approve his selection of Lead Counsel.

## ARGUMENT

In determining the Lead Plaintiff motion, the Court must adopt a presumption that the most adequate plaintiff is the person or persons who "has the largest financial interest in the relief sought by the class" and who otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The PSLRA mandates that a plaintiff:

> set[] forth all of the transactions of the plaintiff in the security that is subject of the complain during the class period specified in the complaint.

In determining the largest financial interest, courts throughout the country have adopted four

factors first enunciated in *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 11, 1997), and subsequently renamed the *Olsten* factors, *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998), which require plaintiffs to net their purchases from their sales during the Class Period:

> (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period.

*Accord Netsky v. Capstead Mortgage Corp.*, 2000 U.S. Dist. LEXIS 9941, at *17 (N.D. Tex. July 12, 2000); *In re Ribozyme Pharmaceuticals, Inc. Sec. Litig.*, 192 F.R.D. 656, 660-61 (D. Colo. 2000); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 995 (N.D. Cal. 1999); *In re: Party City Sec. Litig.*, 189 F.R.D. 91, 105 (D. N.J. 1999).

The requirement that one must net purchases from sales during the Class Period is grounded in traditional federal securities jurisprudence. Under Section 10(b) of the Exchange Act, a plaintiff may only recover one's "'actual damages', which courts routinely understand to mean 'out-of-pocket loss.'" *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F. 2d 1540, 1551-52 (7th Cir. 1990) (citing *Levine v. Seilon, Inc.*, 439 F.2d 328 (S.D.N.Y. 1971) (Friendly, J.)). That is, "the difference between what [an investor] paid for the stock and what is was worth." *Id.* (citing *Pelletier v. Stuart-James Co., Inc.*, 863 F. 2d 1550, 1557-58 (11th Cir. 1989); *Feldman v. Pioneer Petroleum, Inc.*, 813 F. 2d 296, 301-02 (10th Cir. 1987). See also *Rowe v. Maremont Corp.*, 650 F. Supp. 1091, 1113 (N.D. Ill. 1986) (citing *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 155 (1972)). When an investor purchased and sold shares of the company's stock during the class period, "it is only fair to subtract from his injury upon purchase the amount of his recoupment upon sales. In other words, the plaintiff's profits from reselling are deducted from his losses." *In re Seagate Technology II Sec. Litig.*, 843 F. Supp. 1341, 1349 (N.D. Cal. 1994). By selling into the alleged fraud, a plaintiff benefits from the alleged inflation to the price of the stock. Accordingly, one must subtract the profits of sales at inflated stock prices from the losses of purchases at inflated stock prices in order to ascertain one's actual

-3-

damages.

Moreover, as the court in *McKesson HBOC*, the court noted, "one's 'interest' in a litigation is . . . directly tied to what one might recover." 97 F. Supp. 2d at 997. In the claims administration of any settlement or judgment, class members are required to list their sales and purchases during the Class Period. The gains on sales are netted from the losses on purchases to ascertain "what one might recover." These simple calculations are what the courts in *Lax* and *Olsten* recognized in the four factors they propose to evaluate the "largest financial interest" under the PSLRA.[1]

Courts are further cautioned against appointing disparate individuals that counsel has put together as a "group" for purposes of aggregating losses under the PSLRA. *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455 (S.D. Tex. 2002); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001). *Accord In re Carreker Corp. Sec. Litig.*, Civil Action No. 3:03-CV-0250-M, slip op. (N.D. Tex. Aug. 14, 2003) (attached hereto) ("The Court does not believe that a group can be created merely by counsel's giving a common name to previously unrelated people, who present no detailed structure by which they will operate.").[2]

At least one member of one of the groups is an "in-and-out" investor who may not have any loss. That is, if an investor sold every share he purchased during the Class Period, and the inflation per share was a constant, then his gains and losses are a wash. Such in-and-out investors have been held inadequate to Lead Plaintiff. *See In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993,

---

[1] One movant, James M. Brower ("Brower") failed to net the proceeds from 39,300 shares of Sonus common stock that he sold during the Class Period at some of the highest prices at which Sonus traded during the Class Period. Based on the mean trading prices for the days of his sales, Brower failed to include proceeds of up to $313,253. Depending on the time of day he sold, his proceeds may have been higher. Deducting the $313,253 from his stated losses of $400,874.88 reveals that his actual losses for "all" transactions, as is required under the PSLRA, is at most $87,621.88. Brower's failure to net "all" transactions inflated his purported losses by 78%.

[2] Two movants, the Belland Group and Jiang Group, are comprised of unrelated individuals who have been proffered by counsel as a group, but which exist solely by dint of their association with counsel.

-4-

998 (N.D. Cal. 1998).[3]

Finally, there is the issue of whether one can serve two masters where you have equivalent fiduciary duties to both masters. Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg") has filed motions for lead plaintiff on behalf of two competing movants: the Jiang Group and Global Undervalued Securities Master Fund, L.P. ("Global"). As noted above, there is an obvious weakness in the Jiang Group's motion by virtue of it being no more than the creation of counsel. But, can Milberg raise that objection against the Jiang Group? It clearly is to the advantage of the Global to raise the challenge to the Jiang Group, but doing so would be a breach of Milberg's duty to Jiang. Yet, not doing so is a breach to its duty to represent Global zealously. Either way, Milberg has shown that it will risk breaching a fiduciary duty to a client to be appointed Lead Counsel. Although an individual client may agree to overlook such risky behavior of its counsel for individual representation, the Court has an obligation to the Class under Fed. R. Civ. P. 23 to protect the interests of absent Class members, which should not allow even the appearance of impropriety.

The Jiang Group and Global are apparently willing to let Milberg represent each other when conflicts to its fiduciary obligations are present. Accordingly, neither Jiang Group nor Global can be deemed are adequate under Rule 23(a), as neither the Jiang Group nor Global must understand the nature of fiduciary duties and the risk to which they would subject the Class.

## CONCLUSION

Akhtar does not suffer any of the defects or risks to which other movants are subject. Accordingly, for the reasons stated herein and Movant's earlier submission, Akhtar respectfully request that the Court: (1) consolidate the Related Actions; (2) appoint Mohammed Akhtar as Lead Plaintiff for the Class; and (3) approve Lead Plaintiff's selection of Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel for the Class and Richard J. Vita as

---

[3] The second largest loss purported by the Belland Group was for such an in-an-out investor, Leopoldo L. Mestre. See Declaration of Theodore M. Hess-Mahan at Exhibit 3.

Local Counsel for the Class.

Dated: April 26, 2004

                              Respectfully submitted,

                              */s/ Richard J. Vita*

                              Richard J. Vita   (BBO# 510260)
                              **LAW OFFICES OF RICHARD J. VITA, P.C.**
                              77 Franklin Street, Suite 300
                              Boston, MA 02110
                              Telephone: (617) 426-6566

                              **Proposed Local Counsel for Plaintiff and the Class**

                              **POMERANTZ HAUDEK BLOCK
                                GROSSMAN & GROSS LLP**
                              Stanley M. Grossman
                              Marc I. Gross
                              100 Park Avenue
                              New York, NY 10017
                              Telephone: (212) 661-1100

                              **Proposed Lead Counsel For Plaintiff and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE                              §
CARREKER CORPORATION               §   Civil Action No. 3:03-CV-0250-M
SECURITIES LITIGATION              §

## ORDER

Proper notice of the pendency of this action having been given under 15 U.S.C. § 78u-4(a)(3)(A)(i), the Court now has before it dueling Motions to Appoint Lead Plaintiffs, with each movant not surprisingly seeking to have different attorneys appointed by the Court. On June 16, 2003, the Court heard oral argument on the Motions. There are two issues presented: first, is John Wenturine, the movant with the largest claimed loss, an appropriate Lead Plaintiff when he bought and sold all of his Carreker stock during the class period; and second, should the Court consider seven individuals, including two married couples, a "group" under 15 U.S.C. § 78u-4 (a)(3)(B)(iii), when, if it so treats them, they would have larger losses than those claimed by John Wenturine?

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interest of class members...." 15 U.S.C. § 78u-4(a)(3)(B)(I). The Act creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (a) has filed the complaint or brought a motion for appointment of lead plaintiff in response to the publication of notice; (2) "in the determination of the Court has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Federal Rule of Civil Procedure 23." 15 U.S.C. § 78u-

1

4(a)(3)(B)(iii)(I)(aa)-(cc). This presumption may be rebutted by proof that the presumptively most adequate plaintiff (1) "will not fairly and adequately protect the interests of the class;" or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

John Wenturine claims losses in excess of $80,000. The position asserted by the cross-movants is that because Wenturine bought and sold all of his Carreker stock during the class period, he suffered no recoverable damages, because throughout the class period the Carreker stock value was inflated by allegedly fraudulent accounting misstatements. In response, Wenturine submits an affidavit from an expert witness, Dr. Blaine Nye, who concludes that a class member who bought and sold Carreker stock during the class period could suffer losses, and recoverable damages, despite the inflation of the stock price caused by accounting misrepresentations. The expert also notes that 60% of the potential class members in this case were in and out traders; that is, they bought and sold Carreker stock during the class period.

The Court accepts the argument that an in and out trader could conceivably suffer recoverable damages, depending upon the extent to which, compared to the purchase price, the stock's value was inflated at the time of sale. As is confirmed by Exhibit 5 of the materials tendered by Wenturine's counsel at the June 16, 2003 hearing, some scenarios involving in and out traders would result in actual damages to them, and some would not. The examples discussed in Exhibit 5 demonstrate that in half of the hypotheticals, in and out traders were damaged, and in the other half they were not. The situation of in and out traders must be contrasted with those who held their Carreker stock at the end of the class period. Without addressing liability questions, they undoubtedly were damaged when the stock price dropped. In contrast, Mr. Wenturine may or may not have actually been

damaged, and a great deal of time, effort and expense will undoubtedly be incurred to determine if he is subject to a unique no damage defense that cannot be asserted against those who still held Carreker stock at the end of the class period. The Court concludes that such a scenario renders Wenturine, who moves to be appointed the sole Lead Plaintiff, an inadequate plaintiff under Rule 23, and the Court thus rejects his Motion to be appointed Lead Plaintiff. Several courts have reached similar conclusions in light of similar facts. *See In re Cable & Wireless, PLC*, Civ. No. 02-1860 at 14-16 (E.D. Va. 2003); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 998 (N.D. Cal. 1998).

The second Motion for Appointment as Lead Plaintiffs is brought by seven individuals whose total alleged losses exceed Wenturine's, but whose individual claims, even when combining the claims of spouses, do not exceed Wenturine's. Their attorneys urge the Court to treat them as a "group" under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Their attorneys have recently assembled them as such and thereafter withdrew their conflicting motions to have their various clients appointed. Excluding the married couples, these persons had no relationship prior to this suit. They live in various cities across the United States. They have had a joint telephone conference only once, so close to the time of hearing that the Court (and opposing counsel) heard of it only at the hearing. Prior to that June 10 telephone call, only an undesignated four of the seven were able to arrange to participate in the single call conducted. Their lawyers proffered at the hearing their individual declarations, by which they make non-specific statements that they have "implemented procedures," have a "regular schedule" and will make decisions in this case on majority vote (of stock? per capita?). Two of the five, like Wenturine, were in and out traders. The seven ask the Court to select three law firms as co-lead counsel.

3

In the Court's view, these seven individuals are not a "group" as the PSLRA uses the term in 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). *See generally Casolari v. Van Wagoner Funds, Inc.*, No. 02-03383 SBA (N.D. Cal. 2003); *In re Enron Corp. Securities Litigation*, 206 F.R.D. 427, 455 (S.D. Tex. 2002); *In re Razorfish, Inc. Securities Litigation*, 143 F. Supp. 2d 304 (S.D, N.Y. 2001). The Court does not believe a group can be created merely by counsel's giving a common name to previously unrelated people, who present no detailed structure by which they will operate. The Court has in the past, and will in the future, consider whether an appointment of previously unrelated persons best serves the interest of the class and whether a sufficient governance structure is in place to assure that those individuals will actually manage the litigation, but in this case, the Court sees no advantage to combining these seven persons to act as Lead Plaintiffs. The married couple of Reed Gustow and Heather Winett, who previously selected the well-qualified firm of Berger & Montague to act as their counsel, and who in the aggregate suffered the greatest alleged loss ($47,450) of any persons before the Court other than Wenturine, are appropriate persons to act as Lead Plaintiffs. Clearly, a married couple can be considered a "group" under the PSLRA.

The Court preliminarily determines that Gustow and Winett meet the requirements of adequacy and typicality under FED.R.CIV.P. 23. *In re Waste Management, Inc.*, 128 F. Supp. 2d 401, 411 (S.D. Tex. 2000). Typicality exists if the named plaintiffs' claims "arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Longden v. Sunderman*, 123 F.R.D. 547, 556 (N.D. Tex. 1988). The adequacy requirement is fulfilled if there are no conflicts of interests between the named plaintiffs and other class members, and the named parties must be prepared to prosecute the action vigorously. *Id.* at 557. Here, the alleged damages all arise out of the same alleged accounting frauds of Defendants

4

that the Plaintiffs contend artificially inflated the price of Carreker stock. Proof of injury and damages by Winett and Gustow would establish the claims of other class members as well.

The Court emphasizes that the inquiry into these factors at this stage is not as searching as will occur when the Court reviews a motion for class certification. However, for the purpose of appointing lead plaintiffs, the Court determines that Winett and Gustow are adequate representatives of the class and that their claims are typical of the claims of the class.

Finally, the Court must appoint counsel to represent the Lead Plaintiffs. The PSLRA vests authority with the Lead Plaintiff to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court finds that Berger & Montague is very experienced and well qualified to act as counsel for the Lead Plaintiffs. Susman Godfrey is also well qualified to assist as local counsel. The Court declines to appoint the other counsel initially selected by the persons who sought appointment as Lead Plaintiffs but who are not being appointed. In the Court's view, appointing two other law firms to act as co-lead counsel is not in the best interest of the putative class.

The Court appoints Reed Gustow and Heather Winett as Lead Plaintiffs, and Berger & Montague as Lead Counsel and Susman Godfrey as local counsel. The Court DENIES all other motions to appoint lead plaintiff and approve lead counsel.

SO ORDERED this 14 day of August, 2003.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

5